UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

**ANGELA M. FERLITO and ANGELO FERLITO**

            Plaintiffs,

       v.                                5:03-CV-96 (HGM/GHL)

**CITY OF OSWEGO, ALEXANDER ZUKOVSKY,**
**in his official capacity as Chief of Police,**
**City of Oswego Police Department, and**
**JOHN SMEGELSKY, Individually and in his**
**official capacity as Police Officer for the**
**City of Oswego Police Department, and**
**MICHAEL DEHM, JR., Individually and in his**
**official capacity as a Police Captain for the**
**City of Oswego Police Department,**

            Defendants.

_____

**APPEARANCES:**                                  **OF COUNSEL:**

HOFFMANN, HUBERT & HOFFMANN, LLP      TERRANCE J. HOFFMANN, ESQ.
Attorneys for Plaintiffs
4629 Onondaga Boulevard
Syracuse, New York 13219

P. MICHAEL SHANLEY, ESQ.
Assistant City Attorney
Attorney for Defendants
283 West 2nd Street
Oswego, New York 13126

**HOWARD G. MUNSON**
**Senior United States District Judge**

### MEMORANDUM - DECISION AND ORDER

     Currently before the Court is Defendants' motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure seeking dismissal of Plaintiffs' summons and dismissal

of their Second Amended complaint in its entirety.  Dkt. No. 29, Notice of Mot.  Plaintiffs have filed

their opposition to Defendants' motion.  For the reasons set forth below, the Court GRANTS

Defendants' motion for summary judgment.

## BACKGROUND

Plaintiffs, a married couple who reside in Oswego, New York, Angela M. Ferlito and Angelo Ferlito filed their initial complaint against Defendants City of Oswego ("the City"), Chief of Police Alexander Zukovsky ("Chief Zukovsky"), and Police officers Detective John Smegelsky ("Smegelsky") and Captain Michael Dehm, Jr. ("Dehm") on January 22, 2003.  Dkt. No. 1, Compl. Plaintiffs have since twice amended their initial complaint.  Dkt. No. 10, First Am. Compl.; Dkt. No. 22, Second Am. Compl.

From September 1998 through the end of the 2002-03 school year, Angela Ferlito was a business teacher at the Oswego High School ("High School").  Dkt. No. 29, Letter to Angela Ferlito at ¶ 3, March 19, 2003.  On March 18, 2002, she convened a meeting of the Future Business Leaders Club of America at the High School.  Dkt. No. 29, Angela Ferlito's Statement.  At the close of the meeting, she observed a clear plastic bag on the floor that appeared to contain a greenish/brownish vegetable-like substance.  Dkt. No. 22, Second Am. Compl. at ¶¶ 18-19.  Suspecting that the bag contained marihuana, she picked it up and asked those students remaining in the room to identify the bag's contents.  Id. at ¶ 19.  None of the students either identified the bag's contents, acknowledged ownership of the bag or implicated their peers as to ownership of the bag.  Id.  Angela Ferlito then placed the bag in a desk.  Dkt. No. 29, Angela Ferlito's Statement.  After the room emptied, she put the bag in her pocket.  Id.  Two students, Mary Kate Redding ("Redding") and Tabitha Pelkey ("Pelkey"), however, returned to the room, and Redding advised Angela Ferlito that she had dropped the plastic bag on the floor a few minutes earlier.  Dkt. No. 22, Second Am. Compl. at ¶ 19.  Angela Ferlito relinquished possession of the bag to Redding.  Id.  Angela Ferlito then left the High School and drove her daughter to a friend's house located a couple of blocks away from the High School.

Dkt. No. 22, Second Am. Compl. at ¶ 19.  She then returned to the High School and sought to locate Dennis Farnsworth ("Farnsworth"), the High School's Principal.  Id.   Unable to find Farnsworth, Angela Ferlito located an Assistant Principal and advised her as to the incident with the bag and student.  Id.  Angela Ferlito then identified the student to both Assistant Principals, Susan Piasecki ("Piasecki") and Barbara Wheeler ("Wheeler") and advised them that she believed the student was at an athletic practice on school grounds. Id.  Wheeler contacted the  City School District of Oswego ("the District") Athletic Department to determine where Redding was practicing.  Id.  Wheeler and Piasecki located Redding at her athletic practice and confronted her regarding the plastic bag.  Dkt. No. 29, Wheeler's Statement.  Redding admitted ownership/possession of the bag, whereupon Wheeler and Piasecki confiscated it, called Farnsworth and locked it in his office.  Id. On March 19, 2002, City Police Officer Daniel Chamberlain ("Chamberlain"), who is assigned as a School Resource Officer within the City School District, performed a field test on the bag's contents in the presence of Farnsworth and Wheeler, which indicated that bag contained marihuana. Chamberlain took a statement from Redding in which she confirmed that Angela Ferlito gave her the marihuana. Dkt. No. 29, Redding's Statement.   Officer Chamberlain then contacted Dehm to report his investigation's findings, which prompted Dehm to meet Chamberlain and Farnsworth at the High School.  Dehm took a statement from Wheeler. Dkt. No. 29, Wheeler's Statement.  Farnsworth requested that the City Police Department investigate the incident further.  Dehm contacted the Office of the Oswego County District Attorney and spoke with then Assistant District Attorney Donald Dodd ("Dodd") who advised Dehm to obtain additional statements.  Dehm thereafter assigned Smelgelsky to continue the investigation of the incident.  Smegelsky took statements from Farnsworth and Piasecki. Dkt. No. 29, Farnsworth's Statement; Piasecki's Statement.  Smegelsky later met Angela Ferlito in an Assistant Principal's office at the High School and asked her to

provide a statement, but she became unavailable because of her teaching duties.  Angela Ferlito later met Detective Smegelsky at the City Police Department and conveyed to him the previous day's events and signed a statement to that effect prepared by Detective Smegelsky.  The following day Smelgelsky also obtained a statement from Pelkey.  Dkt. No. 29, Pelkey's Statement.

On March 19 and 20, 2002, Smegelsky consulted with Dodd regarding the incident at the High School.  After having received and reviewed copies of the statements of Angela Ferlito, Redding, Farnsworth, Wheeler, Piasecki, and Pelkey, Dodd concluded that it would be proper to charge Angela Ferlito with a B Misdemeanor Criminal Sale of Marihuana in the Fifth Degree, and he informed Smegelsky of the same.  Dkt. No. 29, Statement of Material Facts at ¶ 3.  Later that day, Smelgelsky filed an accusatory instrument charging Angela Ferlito with Criminal Sale of Marihuana Fifth Degree, a B Misdemeanor, pursuant to the Penal Law of the State of New York § 221.35, for which an Appearance Ticket was issued.  Dkt. No. 29, Defs.' Statement of Material Facts at ¶ 4.  Smegelsky requested that Angela Ferlito go to the police station, and she voluntarily appeared at the Oswego Police Station where she was issued the Appearance Ticket.  Dkt. No. 28, Defs.' Mem. of Law at 3.  While Angela Ferlito was "detained" for photographic and fingerprint identification procedures, notably, she was not handcuffed, imprisoned or otherwise detained and was not required to post bail.  Id.

On April 11, 2002, Angela Ferlito appeared in Oswego City Court, where she was arraigned before the Honorable James M. Metcalf, who dismissed the accusatory instrument. Dkt. No. 29, Defs.' Statement of Material Facts at 5.  On April 23, 2002, the District charged Angela Ferlito with engaging in conduct unbecoming of a teacher.  Dkt. No. 29, Notice of Determination of Probable Cause at ¶ 2.  Angela Ferlito and the District subsequently entered into an agreement to resolve the disciplinary charges.  Dkt. No. 29, Agreement.  The parties agreed that on March 18, 2002, Angela

4

Ferlito conducted a meeting of the Future Business Leaders of America Club at the High School. Dkt. No. 29, Agreement at ¶ 1. Following the meeting, and while twelve to fifteen students remained in the room socializing, Angela Ferlito found a clear plastic bag on the floor that contained what she suspected was marihuana, which she placed in her pocket. Id. After the students left the meeting, two students returned, one claiming that the bag and its contents belonged to her sister and that she wanted to retrieve it. Id. at ¶ 2. Angela Ferlito complied with the student's request and returned the bag to the student. Id. Immediately after returning the bag to the student, Angela Ferlito left the High School and drove her daughter a few blocks to a friend's house. Id. at ¶ 3. She immediately returned to the High School where she reported to school administrators that she found what appeared to be a bag of marihuana and that she returned it to the student who claimed it belonged to her sister. Id. at ¶ 4. Angela Ferlito advised the administrators of the student's identity, and the administrators indicated that they would handle the matter henceforth. Id. Soon thereafter, administrators located the student at an athletic practice. Id. at ¶ 5. The student turned over the bag and its contents to the administrators and admitted ownership of the bag. Id. The District adjudicated the matter with regard to the student according to its policies and procedures. Id. Angela Ferlito admitted that she exercised poor judgment by returning the bag to the student and by failing to immediately report the incident to the appropriate District Officials. Id. at ¶ 9. Angela Ferlito acknowledged that there is a policy of zero tolerance with regard to illegal drugs in the District and agreed to participate in any training that the District may recommend in order to ensure that there will be no repetition of that type of incident. Id. at ¶ 10. Angela Ferlito agreed to accept, as penalty for her conduct, a loss of pay for the period from May 22, 2002, through the end of the 2001-02 school year. Id. at ¶ 11. The District agreed that the loss of pay would be assessed by reducing Angela Ferlito's gross pay for the 2002-03 school year by the amount of $6,195.83. Id.

In the event she did not work the entire 2002-03 school year, Angela Ferlito agreed to pay any unpaid balance to the District immediately upon the cessation of her employment. Id. The District, in consideration of Angela Ferlito's acknowledgments and representations, agreed to withdraw, with prejudice to their being re-filed, the disciplinary charges it brought against Angela.Ferlito. Id. at ¶ 12. James K. Eby, Esq. represented Angela Ferlito with respect to the accusatory instrument and the District charges. Dkt. No. 29, Eby Aff. at ¶ 2. Angela Ferlito paid $1,500 to Eby for services rendered. Dkt. No. 29, Statement of Services Rendered. The New York State United Teachers reimbursed Angela Ferlito for her attorney's fees and expenses in the amount of $1,500. Dkt. No. 29, New York State United Teachers Letter, September 12, 2002.

Citing budgetary constraints, in March of 2003, the District notified Angela Ferlito that it may discontinue her position for the 2003-04 school year. Dkt. No. 29, Letter to Angela Ferlito at ¶ 1, March 19, 2003. On June 4, 2003, the District informed Angela Ferlito that it would discontinue her employment as of July 1, 2003. Dkt. No. 29, Letter to Angela Ferlito, at ¶ 1, June 4, 2003. Angela Ferlito challenged, apparently unsuccessfully, her termination and has since been employed by the North Rose School District as a business teacher.

In their Second Amended Complaint, Plaintiffs allege several causes of action. Plaintiffs allege: (1) that the individual defendants acting in both their individual, with the exception of Zukovsky, and official capacities deprived Angela Ferlito of her constitutional rights in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) and the New York State Constitution; (2) that Dehm and Smegelsky conspired to violate Angela Ferlito's constitutional rights when they prepared the criminal complaint against her; (3) a claim of false arrest against the City and Smegelsky; (4) a claim of defamation against the City and Smegelsky; (5) a claim for malicious prosecution against the City and Smegelsky; and (6)

a claim on behalf of Angelo Ferlito against all Defendants for the loss of the society and services of his wife. Dkt. No. 22, Second Amended Compl. at ¶¶ 27-54. Plaintiffs seek compensatory damages, punitive damages and reasonable attorneys' fees. Id. at Wherefore Clause.

## DISCUSSION

### I.    Summary Judgment Standard

The standard for summary judgment is well settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure a just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1991) (quoting Rule 1 of the Federal Rules of Civil Procedure). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. See Id.; United States v. Diebold Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248,

106 S.Ct. at 2510.  When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

**II.    42 U.S.C. § 1983**

Section 1983 provides a cause of action for the deprivation of any rights, immunities or privileges provided by the United States Constitution against law enforcement officers who abuse their power by substituting enmity for investigation. Abreu v. City of New York, 2006 WL 401651, at *4 (E.D.N.Y. February 22, 2006).  When asserting a § 1983 claim, a plaintiff must prove that: (1) the challenged conduct was attributable at least in part to a person who was acting under the color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.  Breitbard v. Mitchell, 390 F.Supp.2d 237, 244-45 (E.D.N.Y. 2005) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

*A.    Municipal Liability–the City*

To establish liability under 42 U.S.C. § 1983 against a municipality for conduct by employees such as police officers, a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy.  *See* Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  "Custom" denotes "persistent and widespread . . . practices," *see* Adickes v. S.H. Kress & Co., 398 U.S. 144, 167, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970), and thus "[p]roof of a single incident of unconstitutional activity is not

sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-34, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 79 (1985). The Supreme Court has also held that a single act taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken, constitutes a municipal policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiffs must allege "actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of [their] civil rights." Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996). Nonetheless, "[t]he fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." Pembaur, 475 U.S. at 482-83, 106 S.Ct. at 1299-1300 (citation and footnotes omitted). In addition, there is no respondeat superior liability against a municipality under 42 U.S.C. § 1983 for conduct by employees below the policymaking level. Monell, 436 U.S. at 691-95; Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000).

In attributing § 1983 liability to the City, Plaintiffs *theorize* that "Zukovsky was to some extent actively involved in the investigation and prosecution of the Plaintiff . . . ." Dkt. No. 33, Pls.' Mem. of Law at 17. Plaintiffs argue that Zukovsky, as the City's Chief of Police, "is the final decision maker for the City . . . relative to filing . . . criminal charges and making arrests within his jurisdiction." Id. at 18. Defendants argue that no "official custom, policy, practice or usage" of the City "has been asserted in this case." Dkt. No. 28, Defs.' Mem. of Law at 9.

9

Plaintiffs' argument is without merit.  In <u>Jett v. Dallas Independent School District</u>, the Supreme Court held that whether an official has policy-making authority is determined by state and local law.  491 U.S. 701, 737, 109 S.Ct. 2702, 2723-24, 105 L.Ed.2d 598 (1989).  Under the City's Charter, it is the Mayor's "duty to administer all city departments, to establish rules, regulations and procedures for them and to see to it that all local laws, ordinances, applicable state and federal laws and all lawful Council determinations are faithfully executed.  He is responsible for the supervision of all city employees and all city departments."  *See* <u>http://oswegony.org/DEPT_mayor.html.</u> (last visited July 7, 2006).  Consequently, Zukovsky did not qualify as a policy-making official, and Plaintiffs' allegations thus do not suggest an official custom or policy.  *See* <u>Moray</u>, 924 F.Supp. at 12.  Summary judgment is GRANTED as to the City and Zukovsky, and the Court dismisses them from Plaintiffs' action.

> B.   *False Arrest*

In the third cause of action of their Second Amended Complaint, Plaintiffs allege that Smegelsky, acting in his capacity as a City Police Officer and as an agent, servant and employee of the City, falsely arrested Angela Ferlito.  Dkt. No. 22, Second Am. Compl. at ¶ 35.  False arrest is a violation of an individual's rights under the Fourth Amendment. <u>Quinn v. City of New York</u>, 2003 WL 1090205, at *2 (E.D.N.Y. March 21, 2003).  A § 1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures, including the right to be free from false arrest.  <u>Caldarola v. Calbrese</u>, 298 F.3d 156, 161 (2d Cir. 2002).  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause (citation omitted), is substantially the same as a claim for false arrest under New York law."  <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  To establish

a successful false arrest claim, Plaintiffs must prove four elements: "(1) the defendant . . . intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994) (setting forth the elements for false arrest under state law).

Here, it is clear that Angela Ferlito was aware of her confinement and thus Plaintiffs satisfy the second element.  The parties dispute whether Defendants intended to confine Angela Ferlito, whether she consented to the confinement and whether the confinement was privileged.  Plaintiffs contend that Angela Ferlito appeared at the City Police Department under compulsion and was involuntarily detained there so that Detective Smegelsky could issue her an Appearance Ticket.  Dkt. No. 33, Pls.' Mem. of Law at 6.  The issuance of an Appearance Ticket, however, does not itself constitute confinement for purposes of false arrest claims.  Griffin-Nolan v. Providence Wash. Ins. Co., 2005 WL 1460424, at *4 (N.D.N.Y. June 20, 2005).  Plaintiffs also urge that Angela Ferlito was "detained" at the police station for one and a half hours so that the police could take a "mug shot" of her and take her fingerprints.  Dkt. No. 33, Pls.' Mem. of Law at 6.

Plaintiffs' argument fails, however, because after an arrest, the arresting or other appropriate officer or agency must take fingerprints of the arrested person if the offense with which she is charged in the filed accusatory instrument is a misdemeanor as defined in the penal law.  N.Y. CRIM. PROC. LAW § 160.10(1)(b).  Furthermore, when fingerprints are taken pursuant to N.Y. CRIM. PROC. LAW §160.10(1)(b), a photograph of the arrested person may also be taken.  N.Y. CRIM. PROC. LAW §160.10(3).  Therefore, during the course of fingerprinting and photographing Angela Ferlito, the police officers acted in a manner consistent with New York Criminal Procedure Law because she was

11

charged with a B Misdemeanor of Criminal Sale of Marihuana in the Fifth Degree.

Assuming *arguendo* that the photographing and fingerprinting of Angela Ferlito was unsupported by statutory authority, there is still no evidence that Ms. Ferlito was confined by the police officers during her visit to the police station. She was neither handcuffed, placed in a cell nor required to post bail during her visit. *C.f.* Sulkowska v. City of New York, 129 F.Supp.2d 274, 287 (S.D.N.Y. 2001) ("There is no dispute that [the arresting] Officer intended to arrest the plaintiff," where plaintiff was handcuffed to the bars of a holding cell and kept there for *several hours* and her requests for her asthma medication that was confiscated with her personal belongings was unanswered). Accordingly, Plaintiffs have not shown that Defendants intended to confine Angela Ferlito.

The parties dispute whether Angela Ferlito consented to her alleged confinement. Assuming *arguendo* that confinement has been established, Plaintiffs assert that Angela Ferlito did not consent to such confinement. Dkt. No. 33, Pls.' Mem. of Law at 9. Conversely, Defendants contend that Angela Ferlito consented to report to the Police Station to pick up her Accusatory Instrument and Appearance Ticket. Dkt. No. 28, Defs.' Mem. of Law at 6. The Court is not able to resolve this element at the summary judgment stage.

The privileged confinement element focuses on whether Defendants had probable cause to arrest Angela Ferlito. Probable cause provides a complete defense to a false arrest claim regardless of whether the false arrest claim is brought under state law or § 1983. Okst, 101 F.3d at 852. Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.1999).  The amount of evidence needed to establish probable cause "need not reach the level of evidence necessary to support a conviction . . . but it must constitute more than a rumor, suspicion, or even a strong reason to suspect." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (citations and internal quotations omitted).  In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest" and the conclusions those facts reasonably support. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir.1996)).  In assessing the totality of the circumstances, courts must be aware that "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant.  Whren v. United States, 517 U.S. 806, 812- 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also* Clute v. Dunster, 1989 WL 78221, at *4 (N.D.N.Y. July 13, 1989) ("In other words, a valid arrest will not be rendered invalid by malicious motives" (citation omitted)).  In addition, "the eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y. 1993).

Plaintiffs assert that Defendants lacked probable cause because Smegelsky admitted in his deposition that after learning of the content of statements taken from Angela Ferlito, Redding, the student who dropped the marihuana, and Piasecki, "he did not suspect that [Angela Ferlito] had committed any crime." Dkt. No. 33, Pls.' Mem. of Law at 7.  Plaintiffs' argument, however, ignores Smegelsky's consultation with ADA Dodd on March 19 and 20, 2002 regarding the incident.  After

reviewing the statements from Angela Ferlito, Redding, Farnsworth, Wheeler, Piasecki, and Pelkey, Dodd concluded that it would be proper to charge Angela Ferlito with a criminal offense and that the appropriate charge was a B Misdemeanor of Criminal Sale of Marihuana in the Fifth Degree. *See* Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000) (finding police officers' behavior "objectively reasonable" with respect to probable cause where they "consulted with an Assistant District Attorney, who concurred with the propriety of bringing charges based on the evidence at hand."); Angel v. Kasson, 581 F.Supp. 170, 174 (N.D.N.Y. 1983) (noting officer's consultation with the District Attorney making probable cause determination).

The Misdemeanor of Criminal Sale of Marihuana in the Fifth Degree provides that:

A person is guilty of criminal sale of marihuana in the fifth degree when he knowingly and unlawfully sells, without consideration, one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of two grams or less; or one cigarette containing marihuana.

N.Y. PENAL LAW § 221.35 (2006).  The term "sell" as stated in § 221.35 is defined, under N.Y. PENAL LAW § 220.00(1) (2006), as meaning "to sell, exchange, give or dispose of to another, or to offer or agree to do the same."

Smegelsky needed enough evidence of a violation of § 221.35 to establish probable cause in order to charge Angela Ferlito with a B Misdemeanor of Criminal Sale of Marihuana in the Fifth Degree, but was not required to obtain evidence sufficient to support a conviction on such a charge. Relying on the statements provided by Angela Ferlito, Redding and Piasecki chronicling the details of the transfer of the baggie of marihuana from Angela Ferlito to Redding and the investigation thereafter, coupled with consulting Dodd who noted the propriety of the Criminal Sale of Marihuana in the Fifth Degree charge, Detective Smegelsky had probable cause when charging Angela Ferlito

with the Criminal Sale of Marihuana in the Fifth Degree charge.

Plaintiffs also assert that Judge Metcalf determined during Angela Ferlito's arraignment that there was no probable cause for the Criminal Sale of Marihuana in the Fifth Degree charge because he stated,

> I believe what I have in front of me does not amount to a crime.  I do not find the legislative intent that arose from this particular statute at this particular time. Consequently, I will dismiss on both instances, which, Miss [sic] Ferlito, precludes a future filing basically because I based this on the criminal side of things and I am dismissing sending a message if this matter comes back to this court under this case again, it won't be adhered to again.

Dkt. No. 29, Arraignment/Disposition at 3:3-15.  Plaintiffs have not demonstrated that this statement evinces a lack of probable cause.  While the Court recognizes that the charges against Angela Ferlito were dismissed, in his commentary, Judge Metcalf did not make an express finding as to a lack of probable cause, and the Court does not believe that he necessarily decided the issue of probable cause by implication.  *See* <u>Hernandez v. City of Rochester</u>, 260 F.Supp.2d 599, 611 (W.D.N.Y. 2003).  Plaintiffs have failed to meet all of the elements required to pursue their false arrest claim and summary judgment is appropriate.

C.    *Malicious Prosecution*

In the fifth cause of action of their Second Amended Complaint, Plaintiffs allege that Smegelsky maliciously prosecuted Angela Ferlito.  Dkt. No. 22, Second Am. Compl. at ¶¶ 45-50. The elements of malicious prosecution under § 1983 are "substantially the same" as the elements under New York law.  <u>Hygh v. Jacobs</u>, 961 F.2d 359, 366 (2d Cir. 1992).  Therefore, the analysis of the state and the federal claims is identical.  To state a claim for malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the

proceeding; and (4) actual malice as a motivation for defendant's actions." Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).  In addition, "a plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must show some deprivation of liberty consistent with the concept of 'seizure,'" thus ensuring a cognizable harm under § 1983.  Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).

1.    Initiation of Criminal Proceedings

With regard to the first element, New York Criminal Procedure Law provides that "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court . . . ." N.Y.CRIM. PROC. § 100.05 (McKinney 2004). Here, it is undisputed that Defendants prepared an accusatory instrument against Angela Ferlito, and thus Plaintiffs have established the first element of the malicious prosecution claim.

2.    Termination of the Proceeding in Plaintiff's Favor

In Janetka v. Dabe, the Second Circuit explained that "[i]f the dispositive factor is whether . . . the charge resulting in acquittal 'arose out of events that occurred on the same occasion' as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity."  892 F.2d 187, 190 (2d Cir. 1989).  Consequently, the Second Circuit held that although Janetka had been found guilty of disorderly conduct, the fact that he had been found not guilty as to resisting arrest–a charge arising from the same underlying incident–supported a "favorable termination." Id. The Second Circuit has held that a plaintiff "must alleg[e] and prov[e] that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged" in order to satisfy the favorable termination prong of the prima facie test for malicious prosecution.  Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.

16

1980).  "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of

the accused . . . only when its final disposition is such as to indicate the innocence of the accused."

Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) (citing MacFawn v. Kresler, 88 N.Y.2d 859, 860,

644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996) (explaining that a favorable termination happens "when

the final disposition of the proceeding involves the merits and indicates the accused's innocence");

O'Brien v. Alexander, 101 F.3d 1479, 1486-87 (2d Cir. 1996) (discussing cases); Russell v. Smith,

68 F.3d 33, 36 (2d Cir. 1995) ("In the absence of a decision on the merits, the plaintiff must show

that the final disposition is indicative of innocence.")).  Whether the termination is indicative of

innocence depends on the nature and circumstances of the termination; the dispositive inquiry is

whether the failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution." Murphy,

118 F.3d at 948 (citing Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't

1980)).

Certain dismissals "that do not result from an adjudication of the merits have generally been

held not sufficiently favorable to the accused to be indicative of innocence." Murphy, 118 F.3d at

948 (citing Heaney v. Purdy, 29 N.Y.2d 157, 159-60, 324 N.Y.S.2d 47, 49, 272 N.E.2d 550 (1971)

(dismissals for lack of subject matter jurisdiction); MacFawn, 88 N.Y.2d at 860, 644 N.Y.S.2d at

487 (dismissals pursuant to N.Y. CRIM. PROC. § 170.30(1)(a) for failure to allege sufficient facts to

support the charge).  Other types of dismissals that preclude further prosecution on the same charges

are deemed not to be favorable to the accused for purposes of a malicious prosecution claim.  Such

dismissals include "adjournment[s] in contemplation of dismissal," *see, e.g.*, Hollender v. Trump

Village Cooperative, Inc., 58 N.Y.2d 420, 424-26, 461 N.Y.S.2d 765, 767-68, 448 N.E.2d 432

(1983), which are conditional dismissals that become final if the accused meets certain criteria

during a six-month period.  *See* N.Y. CRIM. PROC. § 170.55 (McKinney 1999).  "Similarly, dismissals by the prosecution 'in the interests of justice' under N.Y. CRIM. PROC. § 170.40, are generally considered not to be dispositions in favor of the accused." Murphy, 118 F.3d at 949 (citing MacLeay v. Arden Hill Hospital, 164 A.D.2d 228, 230-31, 563 N.Y.S.2d 333, 334-35 (3d Dep't 1990); Miller v. Star, 123 A.D.2d 750, 751, 507 N.Y.S.2d 223, 224 (2d Dep't 1986); Hygh, 961 F.2d at 368 ("as a matter of law" a dismissal in the interests of justice "cannot provide the favorable termination required as the basis for a claim of malicious prosecution").

Here, Plaintiffs have failed to establish a favorable termination for Angela Ferlito.  Judge Metcalf dismissed the case on two grounds: (1) in the interest of justice pursuant to Criminal Procedure Law § 170.30 and (2) based on insufficiency of the Accusatory Instrument.  Dkt. No. 29, Arraignment/Disposition, City Court of the State of New York, County of Oswego 2:18-3:7.  Section 170.30 of the Criminal Procedure Law specifies that a "dismissal is required in furtherance of justice, within the meaning of section 170.40."  N.Y. CRIM. PROC. LAW § 170.30 (2006).  In Breen v. Garrison, the Second Circuit held that the district court did not err in dismissing a malicious prosecution claim where the "charge subsequently was dismissed for facial insufficiency pursuant to section 170.30 of New York's Criminal Procedure Law."  169 F.3d 152 (2d Cir. 1999).  In Mack v. Town of Wallkill, the court explained that in dismissing the case pursuant to § 170.30, the Town Justice did not reach the merits of the case and thus found that "the plaintiff's underlying criminal action cannot be said to have terminated in her favor."  253 F.Supp.2d 552, 562 (S.D.N.Y. 2003); *see also* MacFawn, 88 N.Y.2d at 860, 644 N.Y.S.2d 486-87 (explaining that in dismissing information pursuant to § 170.30, "[t]he court did not reach the merits and the question of plaintiff's guilt or innocence remained unanswered after the court dismissed the information.  Accordingly,

plaintiff's complaint in the civil action failed to state a cause of action for malicious prosecution and it was properly dismissed").  Similarly, Judge Metcalf's dismissal of the accusatory instrument against Angela Ferlito pursuant to § 170.30 does not establish a favorable termination of the criminal proceedings.  With respect to the dismissal of Angela Ferlito's charges based upon the insufficiency of the Accusatory Instrument, Plaintiffs again fail to show that such dismissal resulted in a termination in Angela Ferlito's favor. In Bradley v. Village of Greenwood Lake, the court found no favorable termination of the criminal proceedings where the charges were dismissed on the grounds of an insufficient Accusatory Instrument.  376 F. Supp.2d 528, 534 (S.D.N.Y. 2005).  Similarly, Judge Metcalf dismissed Angela Ferlito's charges due to the insufficiency of the Accusatory Instrument.  Therefore, the proceedings did not terminate in her favor.

3.    Probable Cause

As with a false arrest claim, the existence of probable cause entitles Defendants to summary judgment, *see* Broughton v. State, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87, 92-93, 335 N.E.2d 310 (1975), but because the "probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim," Mejia v. City of New York, 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000), the Court must consider the issue separately.  The Second Circuit, however, has clarified, that in order for probable cause that existed at the time of arrest to "dissipate" prior to commencement of prosecution, "the groundless nature of the charge must be made apparent by the discovery of some intervening fact."  *See* Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (quoting Lowth v. Town of Cheektowaga, 83 F.3d 563, 571 (2d Cir.1996)).

For purposes of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful

grounds for prosecuting the defendant in the manner complained of," <u>Rounseville V. Zahl</u>, 13 F.3d 625, 629 (2d Cir. 1994), or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged." <u>Loeb</u>, 77 A.D.2d at 103, 432 N.Y.S.2d at 494-95.  "The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the defendant at that time." <u>Id.</u> (citations omitted).

Plaintiffs argue that Judge Metcalf's comment that Angela Ferlito's conduct "does not amount to a crime" constitutes res judicata as to the probable cause element. Dkt. No. 33, Pls.' Mem. of Law at 13-14.  Plaintiffs have not demonstrated that this statement evinces a lack of probable cause.   As explained above, the Court concludes that Judge Metcalf made neither an explicit nor an implicit finding as to probable cause.  <i>See</i> <u>Hernandez v. City of Rochester</u>, 260 F.Supp.2d 599, 611 (W.D.N.Y. 2003).  Plaintiffs have not demonstrated that Defendants lacked probable cause to commence the criminal action against Angela Ferlito.

4.    Actual Malice

The Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." <u>Lowth</u>, 852 F.2d at 573 (quoting <u>Nardelli v. Stamberg</u>, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975 (1978)). This element is closely related to the lack of probable cause requirement.  <i>See</i> <u>Babi-Ali v. City of New York</u>, 979 F.Supp. 268, 277 (S.D.N.Y. 1997) (citing <u>Post v. Elser</u>, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996)).   "In most cases, the lack of probable cause–while not dispositive–'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" <u>Lowth</u>, 82 F.3d at 573 (quoting <u>Conkey v. State</u>,

74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)).  Here, there is no evidence suggesting that

Defendants acted with "a reckless or grossly negligent disregard of the plaintiff's rights." Donovan

v. Briggs, 250 F.Supp. 2d 242, 261 (W.D.N.Y. 2003) (quoting Hernandez v. State, 228 A.D.2d 902,

904, 644 N.Y.S.2d 380 (3d Dep't 1996)).  Moreover, the fact that Defendants acted with probable

cause tends to defeat any inference of malice.  Plaintiffs have failed to establish that Defendants

acted with actual malice.

Plaintiffs have failed to meet all of the elements required to further pursue their malicious

prosecution claim and Defendants are entitled to summary judgment on this cause of action.

D.    Equal Protection/Conspiracy

In the second cause of action of their Second Amended Complaint, Plaintiffs allege that

Dehm and Smegelsky conspired for the purpose of depriving either directly or indirectly Angela

Ferlito of equal protection of Federal and State Laws and/or equal privileges and immunity under

Federal and State Law.  In furtherance of said conspiracy, Plaintiffs allege that Dehm and Smegelsky

acted jointly and in concert with each other and caused a criminal information/complaint to be issued

charging that Angela Ferlito had violated a criminal statute of the State of New York while knowing

that they had no probable cause or even any reasonable suspicion that the Plaintiff had in fact

violated any criminal statute of the State of New York.  Dkt. No. 22, Second Am. Compl. at ¶¶ 31-

32.  Although the parties largely ignore this cause of action in their moving and opposition papers,

respectively, the Court sees fit to address the matter here.

Title 42 U.S.C. § 1985(3) provides in part:

If two or more persons in any state . . . conspire . . . for the purpose of depriving,
either directly or indirectly, any person or class of persons of the equal protection of

the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Court finds Plaintiffs' § 1985(3) claim barred by the intracorporate conspiracy doctrine, which provides that "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." Quinn v. Nassau County Police Dep't, 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999). The intracorporate conspiracy doctrine applies to individual defendants who are members of the same police department. See id. at 360; National Congress for Puerto Rican Rights v. City of New York, 75 F.Supp.2d 154, 169 (S.D.N.Y. 1999) (dismissing § 1985(3) claim where defendants John Does 1-500 were all members of the New York City Police Department). An exception to the intracorporate conspiracy doctrine exists when individuals pursue "personal interests wholly separate and apart from the entity." Bond v. Bd. of Educ., 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). Plaintiffs make no such allegation here and Defendants are entitled to summary judgment as to Plaintiff's § 1985(3) conspiracy claim.

> E.    Qualified Immunity

For claims that require showing a lack of probable cause, such as false arrest and malicious prosecution, it is appropriate to grant qualified immunity to individual police officers where "either (a) it was objectively reasonable for the officer[s] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991). An officer is shielded by qualified immunity from a false arrest claim when "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could

disagree as to whether there was probable cause to arrest." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).  The Second Circuit recently held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest . . . [W]e focus on the validity of the arrest, and not on the validity of each charge." <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006).  Finally, the analysis ends when it is determined that the police officer had a reasonable basis for believing there is probable cause; there is no requirement to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." <u>Ricciuti</u>, 124 F.3d at 128.

As noted above, Smegelsky had probable cause to arrest Angela Ferlito and Defendants are entitled to qualified immunity.  The Court GRANTS Defendants' motion for summary judgment and dismisses all of Plaintiff's § 1983 and § 1985 claims.

**III.    Supplemental Jurisdiction**

Because the Court has dismissed all of Plaintiffs' federal claims, it must consider whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for defamation and loss of society.  In <u>Valencia ex rel. Franco v. Lee</u>, the Second Circuit set forth factors that a district court should consider when deciding whether to exercise supplemental jurisdiction after all federal law claims have been dismissed from a case.  316 F.3d 299, 305-06 (2d Cir. 2003).  These factors include: (1) whether state law claims implicate the doctrine of preemption; (2) considerations of judicial economy, convenience, fairness, and comity, including the stage of proceedings when the federal claims are dismissed; (3) the existence of novel or unresolved questions of state law; and (4) whether the state law claims concern the state's interest in the administration of its government or

require the balancing of numerous important state government policies.  Id.  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 55 (2d Cir. 2004).  Accordingly, the Court declines to exercise its supplemental jurisdiction here and dismisses Plaintiff's defamation and loss of services and loss of society claims without prejudice.

**CONCLUSION**

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions, oral argument and the applicable law, the Court hereby

**GRANTS** Defendants' motion for summary judgment and dismisses Plaintiffs' false arrest, malicious prosecution and § 1985(3) conspiracy claims.  The Court further dismisses Plaintiffs' state law claims for defamation and loss of services and society without prejudice.

**IT IS SO ORDERED.**

Dated: August 4, 2006
Syracuse, New York


_____
Howard G. Munson
Senior  U.S. District Judge